STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-43

ᒥᒥᒥ-ᒥᒥᒥᒥ-ᒥᒥᒥᒥᒥ

STATE OF MAINE, *et al.*,

Plaintiffs

v.

**DECISION AND ORDER**

ROBERT W. TIBBETTS, JR., *et al.*,

Defendants

This matter is before the court after bench trial on motion for relief under a consent decree and injunction brought by plaintiffs. Plaintiffs seek civil penalties, restitution, attorney's fees and costs and further injunctive relief upon allegations of violations by defendants of a previously issued consent decree and order.

On November 26, 2001, a consent decree and order was filed with the Superior Court upon execution of November 26, 2001, and written execution by the three defendants on November 21, 2001. The decree represented that the defendants had harvested stumpage and transported it to one or more mills in a manner violating Maine's Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A–214, Maine's Forester Licensing Law, 32 M.R.S.A. § 5019, Maine's Consumer Solicitation Sales Act, 32 M.R.S.A. §§ 4661-4671, and Maine's Weights and Measures Law, 10 M.R.S.A. §§ 2301-2755. Consent to the decree and order realized by the signature of the three defendants and counsel for two defendants obligated the defendants to comply with the terms of its order enjoining them from making false representations on oral or printed solicitations, holding themselves out as a "forester" or providing forestry services, misleading landowners as to their unconditional right to cancel home solicitation sales, failure to provide appropriate wood measurement tally sheets for wood harvested, failing to pay

based on "net" scale, and harvesting trees without obtaining a written contract. The order also required the defendants to place a specific express notice in future contracts and enjoined them from harvesting trees without delivering copies of signed contracts with at least seven days notice in advance, making misleading statements as to the nature and extent of the harvest to be performed, including its value, failure to keep business records, failure to make available records to the appropriate state departments and otherwise engaging in any violations of the State of Maine's Unfair Trade Practices Act, Consumer Solicitation Sales Act, Weights and Measures Law, and Forester Licensing Law. The order provided for payment of restitution and attorney's fees and retention of jurisdiction by this court.

Five days of hearings were conducted. Plaintiffs filed a post-trial memorandum and reply to defendants' trial memoranda and each defendant filed a post-trial memorandum or a closing argument. Robert W. Tibbetts, Sr. was represented by counsel as was Darrell Tibbetts. Robert W. Tibbetts, Jr. appeared and participated pro se. Testimony was taken from 11 landowners, "clients" of the defendants. The court heard testimony of a licensed forester who is Chairman of the Board of Licensure of Professional Foresters, a second licensed forester who is a landowner, a forest ranger, a licensed forester who is a District Forester for the State of Maine and the Inspection Program Manager of the Office of State Sealer of Weights and Measures of the Maine Department of Agriculture. The State offered 38 exhibits including 13 timber harvest contracts and seven advertising "flyers" which were admitted.

Maine's Unfair Trade Practices Act is contained in 5 M.R.S.A. §§ 205-A-214. It provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." 5 M.R.S.A. § 207. A body of common law has developed regarding the language of the Act including a

recognition that the law seeks to bring into Maine law the federal interpretations of "unfair methods of competition and unfair or deceptive acts or practices." That law has included such things as failure to disclose certain information in trade or commerce, hidden defects and improper inducements. It has further been found that conduct may be unfair or deceptive within the meaning of the Act even though the defendant had no purpose to deceive and acted in good faith and even when unknowingly perpetrated when there is duty to disclose. *See Binnette v. Dyer Library Ass'n.*, 1996 ME 688 A.2d 898.

The Maine Forester Licensing Law found at 32 M.R.S.A. §§ 5501-5516 defines the term "forestry" as follows:

> 'Forestry" means services relating to forestry requiring the application of forestry principles and techniques. The services include, but are not limited to, investigations, consultations, timber inventory, development of forest management plans, responsible supervision of forest management, forest utilization, appraisal of severed or unsevered timber, forest economics or other forestry activities as carried out in connection with any public or private lands. 'Forestry' does not include services for the physical implementation of cutting, hauling, handling or processing of forest products or for the physical implementation of timber stand improvements or other silvicultural activities or measuring or scaling activities performed by persons licensed under Title 10, section 2365-A.

32 M.R.S.A. § 5501(4). The Act goes on to provide that it is unlawful for a person to practice forestry or advertise or offer to practice forestry without a license issued under the law. 32 M.R.S.A. § 5502.[1]

The Maine Consumer Solicitations Sales Act is found at 32 M.R.S.A. §§ 4661-4671. The Act governs the sale or contracts of sale of goods or services where contact is made by the seller, not at the seller's place of business and without the consumer soliciting the initial contact. This is sometimes called a home solicitation. Under such circumstances, the law requires that the contract be in writing, bear the signature of the seller and the

---

[1] The Maine Forester Licensing law, previously 32 M.R.S.A. §§ 5001-5019, was repealed by laws of 2001. It is the court's understanding that the substance of the repealed law has not changed insofar as it relates to this decree.

consumer, contain the date of the transaction, the terms of the sale or offer, the name and mailing address of the seller's permanent place of business, a statement of the consumer's right to avoid as provided in the law and a statement that the contract may not be performed during the period when the consumer has a right to avoid. 32 M.R.S.A. §§ 4662, 4664-A. It is further a requirement that a completely executed copy of the contract must be furnished by the seller to the consumer immediately after the consumer signs the agreement or contract. 32 M.R.S.S.A. § 4662. The Act further provides that a seller may not make any misrepresentation of a material fact, create a false impression or make false promises and further, a violation of the Act shall constitute a violation of the Maine Unfair Trade Practices Act. 32 M.R.S.A. §§ 4670, 4671.

The Maine Weights and Measures Law is found at 10 M.R.S.A. §§ 2301-2755. A subchapter of that Act is contained in sections 2361-2369 and provides the requirements for measurement of wood. The Act places requirements on the measurement of wood when there is an agreement of the parties between a company or individual buying wood, a contractor or an individual providing services. 10 M.R.S.A. § 2361-A(1). The law contains standards for measurement of wood, 10 M.R.S.A. § 2363-A, and standards of accurate and verifiable measurements for purposes of payment in 32 M.R.S.A. § 2364-A. Among other things, it requires that payment made for services shall be expressed in the same system of measure that was used in making the measurement, the required contents of a tally sheet and the prompt receipt of the tally sheet at time of payment. 32 M.R.S.A. § 2364-A.

In addition to the statutes involved, regulations have been promulgated by the departments of the State of Maine charged with the responsibility of enforcing the laws enumerated.

Robert W. Tibbetts, Sr. is the father of Robert W. Tibbetts, Jr. and Darrell L. Tibbetts. The State complains that the three defendants have worked in concert with each other to violate the consent decree. The defendants argue that they have no legal relationship between them other than the biological kinship and the simple fact that they are all in the business of harvesting wood. The defendants complain that the State is unable to present evidence establishing a legal relationship or joint venture thereby creating some level of joint and or vicarious liability. The issue, obviously, is the extent to which one defendant can be held responsible for the acts of the other. It requires the court to conclude, as a matter of fact, what the true relationship of the parties is and whether the law can hold one defendant responsible for the acts of another.

Robert W. Tibbetts, Sr. is a man in his early 60's who has been a wood harvester all of his adult life, over 46 years. His operation is limited both in time and in scope. He still uses a chainsaw and a skidder and on occasion, uses horses to twitch logs from the woods. During the warm weather, Mr. Tibbetts, Sr. spends time at various pulling competitions at the various state fairs with his draft horses. Generally speaking, he does wood harvesting in areas small in magnitude, too small for the larger harvesters to commit their equipment. Mr. Tibbetts obtains clients by word of mouth but also through the efforts of his son, Robert W. Tibbetts, Jr., who will refer jobs to Mr. Tibbetts, Sr. if it is of the size he wishes to handle and it is during a time when Mr. Tibbetts, Sr. is available.

Darrell Tibbetts does business in the name of Tibbetts Logging & Trucking, a single proprietorship or possibly a partnership with his wife Jessica. Darrell Tibbetts has trucks capable of hauling harvested wood and other major logging equipment to conduct efficient harvesting practices in the field. In addition to his harvesting activities, he also uses his equipment for other contractual work in conjunction with

towns, other private companies and the State of Maine Department of Environmental Protection. Darrell Tibbetts' wife handles the books, the paperwork, preparation of contracts and attachments to contracts and, at least on one occasion, has acted in liaison with the Maine Forestry Service. Because his father does not have trucks capable of hauling logs, Darrell contracts with Robert W. Tibbetts, Sr. to haul the wood Sr. has harvested to the mill. Darrell receives many of his contracts for wood harvesting through contacts made by his brother Robert W. Tibbetts, Jr.

Robert W. Tibbetts, Jr. is disabled, having spent many years as a wood harvester himself. He creates "flyers," written pamphlets soliciting business, which he leaves at various locations such as public buildings and the like. Sometimes he leaves the flyers at individual homes. The flyers contain a great deal of information both in terms of representations as to services to be performed by Robert W. Tibbetts, Jr. or his contractor as well as a great deal of "puff" as to the reputation of himself and his contractors and the magnitude of their work within Northern New England. When Mr. Tibbetts, Jr. makes a contract with a landowner who wishes to have wood harvested, Mr. Tibbetts, Jr. refers that contract to wood harvesters, including his father and his brother. Robert W. Tibbetts, Jr. does not conduct a wood harvesting operation himself.

None of the three defendants is a licensed forester pursuant to Title 32. Nor are any of the defendants a "certified logging professional" as that program is administered by the Board of Licensure of Professional Foresters.

There is no formal contractual relationship between the defendants with some limited exceptions. Clearly, to the extent Robert W. Tibbetts, Sr. contracts with Darrell Tibbetts to haul logs that Sr. has harvested, that is an exception. However, the responsibility of each of the defendants is not founded upon a formal business relationship but upon the duties created by the consent decree. To the extent a

defendant knowingly benefits from the activities of another defendant which are in violation of the express terms of the consent decree, that defendant must be considered as responsible as the offending defendant. Both Darrell Tibbetts and Robert W. Tibbetts, Sr. were aware of the flyers being distributed by Robert W. Tibbetts, Jr. and they were further aware that Robert W. Tibbetts, Jr. had a duty not to violate the terms of the consent decree. If Robert W. Tibbetts, Sr. and Darrell Tibbetts received the benefit of contracts occasioned by practices of Robert W. Tibbetts, Jr. which were in violation of the decree, given their express knowledge of the terms of the decree, they must be held responsible. Obviously, the level of their culpability would vary according to the nature of the violation and the degree to which an individual defendant participated in the violation.[2]

The State asserts that the defendants, most particularly Robert W. Tibbetts, Jr., have represented themselves to be "professional loggers." The State asserts that the licensed forester program as well as the certified logging professional program caused the use of the phrase to be misleading and a misrepresentation of defendants' status. However, there is no statutory definition of a professional logger which has been presented and the law is clear that cutting, hauling, handling or processing of forest products does not come within the definition of forestry practices. 32 MRSA §5501(4). In the absence of a statutory definition, it appears that the defendants are professional loggers in that they undertake logging activities for compensation and the adjective "professional" simply distinguishes them from being "amateur." Clearly, to the extent

---

[2] By agreement of the parties, this proceeding was for the express purpose of determining whether or not a defendant was in violation of the consent decree. If the court finds a violation, it is understood that a further hearing will be held for purposes of determining the relief requested by the State. In the meantime, the level of culpability and liability is not before the court at this time in relation to the level of sanctions to be imposed.

the defendants have engaged in activities statutorily described as forestry services, such practices are unlawful without a proper license.

In the final analysis, the business relationship *de facto* between defendants is a symbiotic one based upon the needs of the "rainmaker," Robert W. Tibbetts, Jr. Robert W. Tibbetts, Sr. and Darrell Tibbetts are contractors available to Robert W. Tibbetts, Jr. and compensate him for acquiring business on their behalf. Darrell Tibbetts conducts trucking activities on behalf of Robert W. Tibbetts, Sr. on a per transaction basis and otherwise does not appear to have a continuing business relationship. Therefore, the responsibility of each party to a specific mandate under the decree depends upon the nature of the mandate itself.

The first problem created by the defendants' activities is the absolute confusion they have created in the minds of the landowners. One of the defendants may solicit the contract and another appears to do the harvesting. The defendants have been unclear to the landowners as to their individual identities. Some landowners believed all defendants were working for the same company and because "Tibbetts Logging & Trucking" was never identified as a corporation or a d/b/a, some landowners were unclear as to the entity responsible to them under the contract. Sometimes the harvesting defendant walked the property with the landowner and sometimes another defendant walked the property. Sometimes paperwork received by the landowner was different than the name considered under the contracts. While the defendants maintain their separate entities, they gave the clear appearance of apparent legal relationships to the confusion of the landowner. Such apparent authority estopps them from denying the relationship.

As an example, Robert W. Tibbetts, Jr. insists he has no relationship with the other defendants but it is clear that he utilized Darrell Tibbetts' contract form and stumpage price lists provided by Jessica Tibbetts.

The contracts themselves were problematical. The consent decree required the harvesting contract to be in writing and signed and dated by the landowner at least seven days in advance of the harvest. The contract was to contain the name, address and telephone number of the harvester, the party responsible for cutting the wood, the name, address and telephone number of the party responsible for making payment, the species, size and estimated volume of trees to be harvested and the price to be paid for the trees to be harvested and the method used to calculate that price. In most cases, a fully executed copy of the contract was not left with the landowner, at least one contract was back dated to effect the right of rescission of the landowner under the law, in many cases the size and estimated volume of trees to be harvested as well as the method of calculation was not contained in the contracts.

Many of the major items of confusion with the landowners were the representations as to the nature and extent of the harvest to be performed, the value and utilization of the wood to be harvested or the amount to be paid to the landowner for the wood harvested. This difficulty was compounded by the acts of solicitation making representations as to the value of the standing timber, a practice forbidden to be conducted by any one except a licensed forester. In many cases, this resulted in the landowner receiving actual payment of an amount drastically less than represented at the time of solicitation.

In further violation of the requirements of a properly qualified forester's practice was representations made as to forest management practices in order to solicit a harvesting contract. Such representations included a need to harvest the large trees so

that smaller trees may grow, the need to prevent trees in woodlots from becoming "root bound," and other forestry management concerns suggested to be a part of a professional forester's services.

Defendant Darrell Tibbetts was aware of the terms of the consent decree. He was aware of the information on the flyers distributed by Robert W. Tibbetts, Jr. He provided copies of contracts to Mr. Tibbetts, Jr. and compensated him in most instances for obtaining contracts. To the extent representations were made in the flyers or by statements by Robert W. Tibbetts, Jr., Darrell Tibbetts benefited from those solicitations and must be held responsible to some degree. Stated differently, he is estopped from denying his use of Robert W. Tibbetts, Jr.'s activities as his representative in obtaining harvesting contracts.

Darrell Tibbetts engaged in harvesting contracts with landowners which did not provide the species, size and estimated volume of trees to be harvested expressed as either number of trees or number of cords. Had Darrell Tibbetts' contract contained the information as to species, size and estimated volume of trees, and had the contracts containing that informationa been provided to the landowners, there would not have been such confusion on the part of numerous landowners as to their expectations from the harvest.

Estimates of harvest shown on copies of contracts provided to the Maine Forest Service were in some cases expressed in board feet. Estimating board feet is within the statutory definition of "forestry services" and therefore such estimation by Darrell as a nonlicensed harvester is a violation of the Forester Licensing Law. On the other hand, the consent decree prohibits the defendant from "holding themselves out to any landowner or landowner's agent as a 'forester' or providing forestry services." The

court is not satisfied by a preponderance of the evidence that Darrell Tibbetts provided estimates to landowners of a yield based upon board feet.

The consent decree prohibits a defendant from harvesting trees without first obtaining a written contract signed and dated by the landowner at least seven days in advance. Title 32 requires such contracts to bear the signature of the seller and the consumer with a statement of the consumer's right to avoid. Most importantly, a completely executed copy of the contract is required to be furnished by the contractor to the landowner immediately after the landowner signs the contract. The seven days advance requirement, the three-day right to avoid the contract and the completely executed copy of the agreement with the landowner were violated by Darrell Tibbetts. In fact, in one case, documents were backdated to attempt to comply with the consent decree.

Darrell Tibbetts executed contracts that did not include an explanation as to the method for determining the price to be received by the landowner. Darrell Tibbetts and his wife made reasonable efforts to provide a stumpage list to landowners but there appeared to be no reasonable efforts to see that the landowner understood the stumpage price list and whether the stumpage price list was relevant to the particular location of the woodlot to be harvested. The clear intent of the law and the consent decree was to assure a landowner was provided an estimate of volume and species by the proposed harvester, relate that information to a price list relevant to the area or mill involved and thereby have a reasonably calculated basis disclosed for determining the value of his or her contract. The system employed by Darrell Tibbetts was void of such a procedure and led to a great deal of misunderstanding. Furthermore, to the extent representations were made in many cases by Darrell Tibbetts but in more cases by Robert W. Tibbetts, Jr., as to the value of the landowner's proposed contract, the proof

of the vast disparity between the amount actually paid to the landowner under the contract and the original estimates is proof of the deception which may have been intentional or simply negligent.

In many cases, the disclosure required by the consent decree to be contained within the contracts was placed on the reverse side of the document, in some cases after the signature page. There is no evidence that Darrell Tibbetts deliberately covered up that notice or otherwise masked its existence. Obviously, it was not a convenient place to be noticed by the landowner and Darrell Tibbetts did not direct the attention of the landowner to such language, although he responded to inquiries by landowners who made note. The consent degree simply required the contract to provide the language and was no more specific than that the lettering be in bold or in color and of a certain size. In that regard, Darrell Tibbetts complied. The burden is clearly on the party demanding the notice to be specific in its decrees as to the manner in which the language is to be placed in the contract presented to the potential harvester customer.

Darrell Tibbetts continues to use a d/b/a, "Tibbetts Logging & Trucking." Use of that title in conjunction with interaction between landowners and his father and his brother becomes extremely misleading. It is harmless except to the extent that the consent decree insists that information given to the landowner be absolutely clear as to the proper identification of the entity doing the harvesting. Landowners were confused and in some instances felt their only ability to identify the harvester was the words on the side of the truck, "Tibbetts Logging & Trucking." Inasmuch as other persons were dealing with harvesters of the same surname, the documentation should have been clear it was Darrell Tibbetts d/b/a Tibbetts Logging & Trucking.

Title 10 M.R.S.A. § 2364-A provides the standards for wood transactions. Among other requirements, when payment is made for services, payment must be expressed in

the same system of measure that was used in making the measurement. 10 M.R.S.A. § 2364-A(E). Conversion of methods of measurement for purposes of payment are therefore prohibited.[3] Darrell and Jessica Tibbetts made conversions for payment purposes.

Substantial evidence was presented regarding the forest operations notification. This is a requirement on the part of a landowner to notify the State when a timber harvest is to take place. Testimony was also presented with respect to forest management plans in the context of woodlots qualifying for tree growth tax consideration. Darrell Tibbetts argues that these are responsibilities of the landowner and he is correct. It does appear, however, to be unfair and somewhat deceptive for a harvester to engage in a contract with a landowner without, at the very least, inquiring of the landowner if he is aware of the requirements and, further, not conducting a harvest until the landowner complies. Indeed, in one case, there appears to be a circumstance wherein a notice of intent to harvest was filed with the State by Darrell Tibbetts after the harvest started.

The State complains that Darrell Tibbetts did not make timely presentation of payment and scale slips. The court is not satisfied that the State has established by a preponderance that the payments were not timely or not within the 15 days called for under the rule. The difficulty in this area is one of confusion. In some cases, landowners were unclear as to when they received payments and the scale slips and on at least one occasion, the landowner was unclear as to whom was responsible for the payment. This is more a matter of contractual confusion than timely payment which

---

[3] Chapter 382 of the Wood Measurement Rules, section 2(b), prohibits such conversion. The rule does have an exception which has been argued by Darrell Tibbetts in his defense. However, the exceptions do not apply in this case because there is not an absolute conversion factor between the two systems, the quantity was not premeasured by a standard unit of measurement, and the conversion in this case was for purposes of payment, not for inventory purposes.

simply buttresses the misleading manner in which Tibbetts did business with individual landowners. Again, this is somewhat compounded by the use of "Tibbetts Logging & Trucking" without any more precise designation.

In the final analysis, Darrell Tibbetts has violated the consent decree in a number of ways. The court is impressed with the efforts by Darrell Tibbetts and his wife to comply with the decree and follow the law. Certainly the activities constituted unfair trade practices in addition to the violations of precise provisions of the decree. The court is not satisfied that evidence has been presented to establish that Darrell Tibbetts and Jessica Tibbetts intentionally defrauded or misrepresented the facts in order to enhance their business. Certainly, the relationship of activities with other family members and failure to pay more attention to the precise terms of the consent decree result in his violations.

The transactions of Robert W. Tibbetts, Sr. contain many of the violations as previously discussed. The contracts, in many cases on forms provided by Darrell Tibbetts, do not contain the material terms as called for by the statutes and the consent decree. These include details of the harvester, the details of the party responsible for payment, volume of trees to be harvested, and price estimates along with calculation methods as required. He violated the Consumer Solicitation Sales Act by failing to leave fully executed contracts with the landowner and in one instance he violated the requirement of the landowner's three-day right to cancel by participating in the back dating of a contract.

Clearly, Robert W. Tibbetts, Sr. conducts wood harvesting "for the fun of it." To the extent he is engaged in misleading conduct, it is to an overwhelming degree the result of referrals to him by Robert W. Tibbetts, Jr.'s solicitation conduct. He does business the old fashioned way with minimum regard to the requirements of the

consent decree or some of the more recent specifications in the law. He uses contract forms provided to him by Darrell Tibbetts, and, it appears, he relies upon Darrell Tibbetts' knowledge as to the use of the contract forms.

With regard to the relationship between Robert Tibbetts, Sr. and Darrell Tibbetts, other than the use of contract forms, it appears that they are arms length transactions for purposes of providing trucking services to Robert W. Tibbetts, Sr.'s harvesting operation. However, again, the use of the Tibbetts Logging & Trucking identification at least provides an apparent business relationship to the landowner and, therefore, again creates an estoppel for Robert W. Tibbetts, Sr. to deny a business relationship on an individual harvest with Darrell Tibbetts.

It is unfortunate that defendant Robert W. Tibbetts, Jr., by his express choice, proceeded into this matter without counsel because his activities appeared to have been major factors in causing complaints by the landowners to the State regarding the operations of all three defendants. Robert W. Tibbetts, Jr. solicited timber-harvesting contracts on behalf of his father, his brother and others through the use of printed flyers. The flyers contained a great deal of "puff" creating the impression that he was a representative of a large timber harvesting business with many years of experience and with proven expertise in the wood harvesting business. In fact, Robert W. Tibbetts, Jr. was simply a "rainmaker" soliciting contracts that he would refer to harvesters for a fee. Therefore, at the time of the solicitation, he may or may not have known who the harvester, the contractor, would be. Robert W. Tibbetts, Jr.'s information on the flyers represented information which falls within the definition of forestry services and expertise and, under the specific statutory provisions in Maine, were violations when made by other than a licensed forester. He made representations with regard to large trees suggesting that younger or smaller trees be harvested to protect the larger trees,

contrary to professional management practices. He refers to removal of trees that might become "root bound," a concept that does not apply to trees in the wild. He made representations to provide forestry services such as selective cutting based upon value, free evaluation of stumpage values and quality determinations of standing trees.

The court does not find that he represented himself or his contractors to be certified logging professionals. He certainly represented that he would provide professional loggers, not a term of art and the court finds no violation in such language other than the extent to which it misrepresents the qualifications of the contractors whom Robert W. Tibbetts, Jr. purported to represent. He made representations on individual locations as to the value of the standing timber in violation of the licensed forester law. Even if not in violation of such law, the values were so far removed from the actual proceeds received by the landowner as to be *prima facie* deceptive. He made representations as to the condition of the woodlots upon completion of the harvest and protection of a brook which was not performed. He made representations as to the price per board feet for certain grades which was false. He made representations as to the value of individual trees and made representations as to proper forest management practices. Further, by failing to distinguish himself from his father and brother as contractors, he represented to the purchasing public a "Tibbetts" company of which he was a member and, therefore, is estopped from denying a business relationship with them and must be held, to some degree, responsible for some of their violations.

Each defendant was aware of the precise terms of the consent degree by virtue of their signature on the document prior to execution by the court. Robert W. Tibbetts, Jr. specifically and intentionally ignored the terms of the decree. Robert W. Tibbetts, Sr. continued to do business as usual without regard to the decree either through ignorance or negligence. Darrell Tibbetts believed he was in compliance with the decree but was

negligent in failing to confirm the practices with the authority responsible for enforcement of its terms. As to a specific defendant with a specific provision of the decree, the culpability as to state of mind is a matter for consideration at the stage of proceedings for the court to consider the relief requested. Because specific duties were created under the consent decree, a violation is a violation regardless of the state of mind of the defendant and the court must so hold.

A number of landowners complained about the condition of their land at the conclusion of the harvest both with regard to Robert W. Tibbetts, Sr. and Darrell Tibbetts. Some testimony related to brush piles in the wrong location, no brush piles in spite of request and at least one bridge over a seasonal drainage waterway created by the dumping of logs. It appears to the court from the testimony of the experts that it is in the best interest of regeneration that brush be left spread throughout the woodlot and if piled, to be placed in very shallow piles so as to not impede undergrowth. This is a problem inherent in the wood harvesting industry because the harvesters are misleading in that the landowners expect a certain level of neatness which is not denied by the wood "harvesters" and in some cases is agreed. The court is satisfied that failure to provide the landowner with reasonable expectations of the appearance of the woodlot after the harvest is as misleading as express promises and, in any event, even though the condition in which the woodlots were left by the defendants is inconsistent with the representations of forestry services, they do not appear to be violations of the decree.

Mr. Robert W. Tibbetts, Jr. is in violation of paragraphs 1, 2, 3, 5, 7 and 10 of the injunction. Robert W. Tibbetts, Sr. is in violation of paragraphs 1, 3, 5 and 10 of the injunction. Darrell Tibbetts is in violation of paragraphs 1, 3, 4, 5, 6, 7, and 10 of the injunction.

The court will schedule without delay a hearing to take evidence pertaining to the relief requested by the plaintiff for violations of the consent decree.

Dated: January _19_, 2006

Donald H. Marden
Justice, Superior Court

Date Filed ___3/2/00___ ___Kennebec___ Docket No. ___CV00-43___
County

Action ___Unfair Trade Practice___

| | |
|---|---|
| Robert W Spear<br>State of Me.,Dept. of Agriculture | Robert W Tibbetts, Jr.  Pro Se<br>Darryl L Tibbetts<br>Robert W Tibbetts, Sr. |

VS.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Lucinda E. White, AAG<br>6 State House Station<br>Augusta, Maine  043330<br>- Linda Conti, AAG          (Co-Counsel) | - Robert Tibbetts Jr.<br>  72 East Dixfield<br>  Jay Maine  04289<br><br>- Henry W. Griffen, Esq. (Darryl Tibbetts)<br>  37 Part St.,Suite 204 (5/15/00)<br>  Lewiston, Maine  04240<br><br>- Ronald J. Cullenberg, Esq. (Robert Tibbetts<br>  120 Broadway                    Sr.)<br>  PO Box 70<br>  Farmington, Maine  04938-0070 |

| Date of Entry | |
|---|---|
| 3/2/00 | Complaint, filed. s/White, AAG<br>Case file notice mailed to Atty. |
| 3/27/00 | Original Summons with return service made upon Robert W. Tibbetts, Sr. on 3/7/00<br>Cover letter indicates that an agreed to a two week extension to answer filed. s/White, AAG |
| 3/30/00 | Acceptance of service filed. s/White, AAG |
| 4/11/00 | Defendant's Answer, filed. s/Leary, Esq.  (4/10/00) |
| 4/20/00 | Original summons with return service on Darryl L. Tibbetts on 3/29/00, filed. s/White, AAG |
| 5/15/00 | Defendants Answer to Complaint, filed. s/Griffen, Esq. |
| 5/17/00 | SCHEDULING ORDER, Marden, J.<br>"Scheduling Order, filed. Discovery deadline is January 17, 2001."<br>Copies mailed to attys. of record |
| 8/16/00 | Notification of Discovery Service, filed. s/Leary, Esq.<br>Defendant's Request for Production of Documents Propounded upon Plaintiff served on Lucinda White, AAG on 8/11/00. Defendant's Interrogatories Propounded to Plantiff served on Lucinda White, AAG on 8/11/00. |
| 8/17/00 | Notice of Discovery Service, filed. s/White, AAG<br>Plaintiffs' Designation of Harold Price as Expert Witness; Plaintiffs' Designation of William Ostrofsky as an Expert Witness; Plaintiffs' Designation of Dennis Brennan as an Expert Witness served on Justin Leary, Esq. and Henry Griffen, Esq. on 8/8/00.<br><br>Notice of Discovery Service, filed. s/White, AAG<br>Notice of Deposition of Robert Tibbetts, Jr.; Notice of Deposition of Robert Tibbetts, Sr. and Notice of Deposition of Darryl Tibbetts served on Justin Leary, Esq. and Henry Griffin, Esq. on 8/16/00 |
| 9/11/00 | Notification of Discovery Service, filed. s/White, AAG<br>Plaintiffs' Designation of Harold Prince as an Expert Witness;Plaintiffs' Designation of William D. Ostrofsky as an Expert Witness and Plaintiffs' Designation of Dennis Brennan as an Expert Witness served on Justin W. Leary, |

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-43

𝒟𝐻𝑀 - 𝐾𝐸𝑁 - 1/2/2007

STATE OF MAINE, *et al.*,

Plaintiffs

v.

ROBERT W. TIBBETTS, JR.,
*et al.*,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

JAN 19 2007

DECISION AND ORDER

This action was commenced by complaint in March of 2000 by the State of Maine and its Commissioner of Agriculture, Food & Rural Resources against Robert W. Tibbetts, Jr., Darrell L. Tibbetts and Robert W. Tibbetts, Sr. Robert W. Tibbetts, Sr. is the father of brothers Robert W. Tibbetts, Jr. and Darrell L. Tibbetts. The original complaint accused the defendants of violations of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§205-A-214 (1989 & Pamph. 1998), the Maine Forester Licensing Law, 32 M.R.S.A. § 5019 (1999), the Maine Consumer Solicitations Sales Act, 32 M.R.S.A. §§ 4661-4671 (1999), and the Maine Weights and Measures Law, 10 M.R.S.A. § 2301-2755 (1997 & Supp. 1998). The State sought injunctive and declaratory relief, civil penalties and attorneys fees from the defendants for the violations resulting from defendants' wood harvesting activities.

Filing of that complaint resulted in a consent decree and order of this court dated November 26, 2001. That order contained an injunction with specific requirements for future wood harvesting activities, the payment of restitution in the amount of $10,000 payable to a fund to be administered and distributed by the Attorney General and costs and attorneys fees in the amount of $3,000. Finally, the court retained jurisdiction for

purposes of such orders as may be necessary for the construction, modification or enforcement of any provision of the decree. The decree especially states that it, ". . . constitutes a 'first offense.'"

In December 2004, the plaintiffs brought a motion for relief alleging specific violations by the defendants of the November 2001 consent decree and order and asking this court to award further civil penalties, modification to the permanent injunction, restitution, attorney's fees and costs. After a multi-day testimonial hearing, the court issued its decision and order of January 19, 2006, finding that with respect to specific and various provisions of the consent order and to varying degrees, the defendants had violated the injunction imposed upon them by the November 2001 consent decree and order. By agreement with the parties at the commencement of the testimonial hearing on the merits, any evidence by any party regarding the relief requested by the State would be subject to further hearing once the court had made its decision whether the decree had been violated. This matter is now before the court after hearing on plaintiffs' request for relief found in their motion for relief under the consent decree.

This order will not repeat the findings in this court's decision and order of January 2006. Suffice it to say that all three defendants had made false representations to landowners concerning a number of characteristics of the defendants and the methods of harvesting to be used, some oral by direct representation and some oral and by printed solicitation material through Robert W. Tibbetts, Jr. as agent. The court also found that Robert W. Tibbetts, Jr. conducted activities constituting the practice of forestry services in violation of the Forester Licensing Law without being properly licensed. The court found all three defendants had made oral representation to the landowners that would tend to mislead them about their unconditional right to cancel

home solicitation sales. The court found that Darrell L. Tibbetts failed to provide appropriate wood measurement documents and other violations of the Wood Measurement Rules under the Weights and Measures Law. The court found all three defendants in violation of a requirement addressing specific information required to be included in all written contracts for harvesting with appropriate disclosures and further found defendant Darrell L. Tibbetts in violation of harvesting trees with less than seven days notice and by delivering copies of the signed contract and notification of intent to harvest to the landowner.

The court found Robert W. Tibbetts, Jr. and Darrell L. Tibbetts to have made oral or written representations that misled landowners as to the nature and extent of the harvest, the value and utilization of the wood, and the amount to be paid. Finally, the court found all three defendants to be in violation of the Maine Unfair Trade Practices Act, Maine Foresters Licensing Law, the Maine Consumer Solicitations Sales Act and the Maine Weights and Measures Law.

For purposes of determination of the specific relief requested, the court, of course, relies upon its observations and analysis made at the time of the hearing on the merits as to the culpability of each individual defendant. This analysis by the court as factfinder in hearing all of the testimony, observing the witnesses and considering the exhibits admitted into evidence, is characterized by the court's paragraph from its order of January 2006:

> Each defendant was aware of the precise terms of the consent degree by virtue of their signature on the document prior to execution by the court. Robert W. Tibbetts, Jr. specifically and intentionally ignored the terms of the decree. Robert W. Tibbetts, Sr. continued to do business as usual without regard to the decree either through ignorance or negligence. Darrell Tibbetts believed he was in compliance with the decree but was negligent in failing to confirm the practices with the authority responsible for enforcement of its terms. As to a specific defendant with a specific provision of the decree, the culpability as to state of mind is a matter for

consideration at the stage of proceedings for the court to consider the relief requested. Because specific duties were created under the consent decree, a violation is a violation regardless of the state of mind of the defendant and the court must so hold.

The State seeks terms of injunctive relief to put all three defendants out of the wood harvesting business as independent contractors. In essence, the State argues that because the defendants had specific requirements to meet in the consent decree and did not meet those specific requirements, they cannot be trusted to engage in the wood harvesting business in any fashion except harvesting their own stumpage from their own land. This is an extreme sanction. Some defendants are more culpable and untrustworthy than others which is precisely the court's finding as expressed in the quoted paragraph above.

The problems start with the activities of Robert W. Tibbetts, Jr. He prepares and distributes printed brochures making misrepresentations as to the identity of the harvester, information and analysis which by law can only be provided by a licensed forester, and the history, size and capabilities of a nonexistent single harvesting organization believed to be the joint effort of his father and his brother. While, from the beginning, he has disclaimed a legal relationship with his father and his brother, it is clear that the representation is that it is a substantial harvesting organization operating over a large geographic area and with substantial assets.

Robert W. Tibbetts, Jr. formerly was a wood harvester but has become disabled and unable to engage in substantial physical activities. He leaves his brochures in rural mailboxes, posts them on bulletin boards in public offices and otherwise cruises for business. He then refers the contacts to his father, his brother and others. Certainly, the consent decree made him well aware of the statutory provisions governing present day

wood harvesting operations and the court can only conclude that he has intentionally violated the order. Therefore, the extreme sanction is appropriate.

As previously stated, Robert W. Tibbetts, Sr. is essentially retired and only engages in wood harvesting at his convenience. A man in his sixties, he has been harvesting since a very young man and has continued to do so through the enactment of most, if not all, of the legislation presently on the books. As a consequence, he has negligently not modified his practices to conform to present law. He, too, was aware of the provisions of the consent decree and he has obtained the benefit of the improper practices of Robert W. Tibbetts, Jr. but his culpability is the least of the three defendants. While penalties are appropriate, the court finds no reason why he should not be able to continue to act as a small time independent contractor in the wood harvesting business as long as he meets specific requirements to avoid misleading landowners and to assure that his business relationship with Darrell L. Tibbetts is in conformity with the law.

Darrell L. Tibbetts operates a wood harvesting business with the assistance of his wife, Jessica. He has trucks and wood harvesters and other equipment which he uses for land excavation and modification work as an adjunct to his wood harvesting operations. It appears from the evidence, that Darrell and his wife have attempted to comply with the consent decree but still do not understand the importance of a proper written contract, properly delivered to the owner with an understanding of the right to cancel, with a lapse period between contract and harvest affording the owner the opportunity to take a "second look," with provisions in the contract that make it clear he is not a certified professional logger under the statute or a licensed forester and that he not make any misrepresentations or take advantage of representations of others as to the value of the wood at the mill as it stands on the landowner's property. Darrell has made an attempt to educate the owners of the trees on the property and has provided

some information, albeit not correct, as to the value of the various species. He, as well as Robert W. Tibbetts, Sr., play fast and loose with the proper handling of the notice of intent to harvest and the forest management plans as might be existent with the landowner. By the same token, he appears to be negligent in his handling of the paperwork and the payment to the landowner, particularly in the matter of timeliness of payment.

Darrell has trucks capable of hauling harvested trees to the mills. He also has a mechanical harvester. He appears to have a relationship with some mills that assure him a market for the wood he has harvested. While there is some evidence that owners were misled in knowing the identity of the true party harvesting the wood, the State wishes the court to make a leap in inference finding that the activity of Darrell in entering into separate contracts with other harvesters for transportation of the wood to the mill, rental of the mechanical harvester and utilizing his relationship with the mill to obtain the best possible price is per se violation of the consent decree. It is true that the law clearly requires the true identity of all parties in a wood harvesting operation and appropriate records to substantiate that identification. To the extent Darrell presents wood to a mill, prepares paperwork and accepts payment in his own name for wood that was harvested by another from land from another, that is clearly an unacceptable practice.

The State presents the testimony of Steven Knockwood who is a former employee of Darrell L. Tibbetts. He is an independent wood harvester who testified that about half of the jobs he performed in the year 2005 were from contacts made by Robert W. Tibbetts, Jr. and that he compensated Robert W. Tibbetts, Jr. for that solicitation. He further testified that he rented from Darrell L. Tibbetts, on occasion, a mechanical harvester with operator for which he compensated Darrell L. Tibbetts. He

further testified that he entered into agreements with Darrell L. Tibbetts to haul timber from many of his jobs to the mill. Finally, he testified that he utilized the experience, knowledge and relationships of Darrell L. Tibbetts as to disposition of the harvested wood. In such cases, Darrell L. Tibbetts handled the payments from the mills. Further, he testified he uses a price sheet similar to that used by Darrell L. Tibbetts.

Since the consent decree, Mr. Knockwood had a contract for a harvest on the property of an elderly Massachusetts resident. The contract was finalized by his visit to her home. While admitting that he harvested the wood in October and November of 2005, he did not start making payments to her until late February of 2006. The scale slips utilized in the transaction identify Darrell L. Tibbetts as the contractor and Mr. Knockwood as the crew.

The court finds nothing suggesting culpability under the consent decree of Darrell L. Tibbetts by virtue of his activities with Mr. Knockwood on this particular operation except for his accepting the payment on paperwork in his name. The merits of the violation are not before the court at this time because they have not been properly pled. The State presented the evidence in an attempt to establish that notwithstanding this court's finding as result of the hearings on the merits, it should find that Darrell L. Tibbetts' violations of the consent order were intentional. Bringing forward such evidence after the substantive evidence of the violations has been determined in an attempt to change the finding by the court is not proper procedure. The Knockwood contract was not pled, was not presented at the time of the hearing on the merits and attempting to grandfather a new cause of action after the law of the case has been established is a questionable practice.

The State asks the court to permanently enjoin Robert W. Tibbetts, Jr. and Darrell L. Tibbetts from engaging in any wood harvesting services except on their own

property, entering into any agreement with owner of property to purchase and harvest timber on a landowner's property or soliciting timber harvesting business on their own behalf, or requesting and receiving any stumpage or timber payments on behalf of someone other than themselves from any mill or wood buyer. As expressly previously stated, the court believes that these provisions are appropriate with respect to Robert W. Tibbetts, Jr. The court believes the provision regarding requesting or receiving stumpage or timber payments directly or indirectly on behalf of someone other than themselves for any mill or wood buyer for harvested timber is appropriate.

Correspondingly, the State asks the court to permanently enjoin Robert W. Tibbetts, Sr. from engaging in any timber harvesting activities as an independent contractor except on his own property which the court is not willing to do. The court does believe that he should be enjoined from engaging in any sales or other activities with Robert W. Tibbetts, Jr. given the history of this case and any relationship with Darrell L. Tibbetts for transportation of harvested wood must necessarily be the subject of a separate written contract specific to that purpose and must mandate that all associated paperwork regarding payment for the timber be in conformity with the law as to the landowner and the wood harvester. In that regard, the court does not see anything inappropriate in requiring Robert W. Tibbetts, Sr. to have all checks received for harvested timber made payable to the landowner. He is free to enter into contracts regarding the manner in which he would receive compensation from the landowner provided the landowner receives the benefit of the gross sale..

Counsel for Darrell L. Tibbetts requests the court to consider an expiration date with respect to any injunction remaining as the result of this proceeding. The court does not believe that would be appropriate, however, inasmuch as the court retains jurisdiction on any injunctive order, there is nothing to prevent Darrell L. Tibbetts from

petitioning the court for modification of a permanent injunction based upon evidence of good faith compliance with all its terms over a reasonable period of time.

The court is satisfied that Robert W. Tibbetts, Jr. has intentionally or with gross disregard for the law committed six violations of the Unfair Trade Practices Act and will assess a $3,000 civil penalty for each violation. In addition, Robert W. Tibbetts, Jr. has unequivocally been placing value on standing timber without a proper license and for that must be assessed a civil penalty of $10,000.

The court has found that Robert W. Tibbetts, Sr. committed four violations of the Unfair Trade Practices Act and assesses a civil penalty of $1,000 for each violation. In addition, Robert W. Tibbetts, Sr. violated the provisions of the Weights and Measures Law as a second violation and imposes a $2,000 civil penalty in that regard.

Under the Weights and Measures Law, the State asks the court to order restitution including both actual damages and liquidated damages of twice the amount of the actual damages. It references 10 M.R.S.A. § 2368(2). The requests for liquidated damages of twice the amount of actual damages, the State believes, results from a cross referencing 10 M.R.S.A. § 2368 to 26 M.R.S.A. § 626-A. Title 26 M.R.S.A. § 626-A is a provision in the employment law calling for liquidated damages of twice the amount of unpaid wages or benefits in the event an employer improperly handles the wages and benefits of an employee. It also has some specific monetary penalties. The court does not agree with the State that the cross-reference authorizes this court to impose liquidated damages of twice the amount of actual damages because section 626-A clearly relates to wages. Notwithstanding this court's previous experience in this

regard, it does not believe that the cross-reference authorizes the court to impose double damages.[1]

The court has found that Darrell L. Tibbetts committed seven violations of the Unfair Trade Practices Act. As stated, the court believes that this was sheer negligence on the part of Darrell and his wife, Jessica, and will impose a civil penalty $2,000 for each violation. The court has also found that Darrell Tibbetts violated the Weights and Measures Laws in his handling of the mill payments and paperwork, but more specifically in his improper use of a conversion factor which was expressly prohibited by law except under specific circumstances. The court imposes a civil penalty of $3,000 in that regard.

The State argues that certain landowners who testified at the hearing on the merits are entitled to restitution. Two of the landowners testified in regard to the value lost in their contract with the defendants using the statement that they "would not have entered into the contract with Darrell L. Tibbetts if they thought they would receive less than" a specific sum of money. The State wishes the court to find that to be credible testimony by property owners of the value of their property. It is clear that under our law a property owner is qualified to render an opinion as to the value of his or her property. Notwithstanding that qualification, the landowner must still provide some foundation for that opinion whether it is based upon evidence of cost of purchase, assessed valuation for tax purposes, previous offers or the like. Simply stating that they would not have entered into a contract accept for a certain amount primarily based upon improper misrepresentations made to them by a nonlicensed forester does not

---

[1] The State references in this regard *State of Maine v. Michael Turner*, Ken. Sup. Ct. Dkt. No. AUGSC-CV-2002-229 in which this court imposed double damages in its order under the authority of cross-reference to 26 M.R.S.A. § 626-A. Such is the peril that lies in a court accepting a proposed order in a default judgment circumstance without independently examining the authority for such an order. Had the court closely examined 26 M.R.S.A. § 626-A it would have seriously questioned, as it has here, its authority to award double damages.

have sufficient credibility to cause this court to order restitution based upon those values expressed. Therefore, the court declines, in effect, to enforce the terms of a quasi-contract under the provisions of the Weights and Measure Law as it applies to wood harvesting. Again, in any event, liquidated damages of twice the amount is not statutorily authorized.

However, one landowner testified that he only received $780 for the timber harvest on his five-acre property and to substantiate a loss he hired a licensed forester to conduct an appropriate evaluation cruise at an expense of $400. The forester's opinion was that the value of the harvested timber was approximately $4,603.98. While the forester testified that he believed this was a conservative estimate, it is also true that he did not know what the price at the mill was for that particular time after an evaluation by the mill of the quality of the wood delivered. Nevertheless, this is true credible testimony as to value and the law allows the landowner to receive restitution of the cost of the appraisal as well. Therefore, Mr. Grenier, the landowner, is entitled to a restitution award against Darrell L. Tibbetts and Robert W. Tibbetts, Jr. in the amount of $4,223.98 made up of the value of the timber harvested less the amount actually received plus the cost of the forester appraisal.

The State asks for restitution for another landowner who testified that his property had been damaged by skidders and that a 15-foot pile of brush remained on the property. The State believes the testimony would support a minimum order of $1,000 restitution against Robert W. Tibbetts, Sr. to allow the landowner "to attempt to restore his property to a more manageable state." Any relief requested must be based upon real evidence established to a probability. Simply providing an arbitrary figure of $1,000 as a "minimum" would not be a proper action of this court.

There was evidence that Darrell L. Tibbetts harvested property of a landowner which violated a previously established forest management plan under the Forestry Statute. The landowner was required to incur a cost of $300 to correct that action by Darrell L. Tibbetts and the court finds that he is entitled to restitution in that amount.

The amounts of restitution ordered are subject to pre-judgment interest from December 10, 2004, the date of filing of the motion for relief, and post-judgment interest in accordance with 14 M.R.S.A. §§ 1602-B and 1602-C. In addition, under the provisions of 14 M.R.S.A. § 1522(1)(A), the State is allowed court costs, reasonable attorneys fees and reasonable expert witness fees for any proceedings taken under 5 M.R.S.A. § 209, the Unfair Trade Practices Act.

It is hereby ORDERED:

(1)     Defendant Robert W. Tibbetts, Jr. is permanently enjoined and prohibited from:
(a)     engaging in timber harvesting services, either directly or indirectly, on any property in Maine, except his own;
(b)     entering into any agreement with any owner of property in Maine to purchase and/or harvest timber on a landowner's property;
(c)     soliciting timber harvesting business on his own behalf or on behalf of any other persons by printed advertisements or direct contact (e.g., personal, mail, express mail, electronic mail, or telephone) with consumers or potential consumers; and
(d)     requesting or receiving any stumpage or timber payments, directly or indirectly, on behalf of someone other than himself from any mill or wood buyer for harvested timber.

(2)     Defendant Robert W. Tibbetts, Sr. is permanently enjoined and prohibited from:
(a)     entering into and conducting timber harvesting under any agreement with any owner of property in Maine unless it specifically requires payments for harvested wood sold to be made directly to the landowner by the mill or the purchaser of the harvested wood;
(b)     entering into any agreement with Darrell L. Tibbetts for transportation of harvested wood without expressed terms in writing and limiting compensation to Darrell L. Tibbetts to a trucking fee;

(c)     entering into any wood harvesting agreement the form and required information which has not been approved by the Office of the Attorney General;

(d)     engaging in any wood harvesting activities within seven (7) days of execution and delivery to the owner of a written contract in accordance with the Consumer Solicitations Sales Act;

(e)     entering into any wood harvesting agreement without express notice to the landowner of right to cancel;

(f)     engaging in any practices limited to a licensed forester without being so licensed.

(3)     Darrell L. Tibbetts is permanently enjoined and prohibited from:

(a)     engaging in any activities limited to a licensed forester without being properly licensed;

(b)     entering into any wood harvesting agreement that does not expressly contain notice to the landowner of a right to cancel;

(c)     engaging in any wood harvesting activities within seven (7) days of execution and delivery to the owner of a written contract in accordance with the Consumer Solicitations Sales Act;

(d)     complying in full with the requirements of the Maine Forest Service regarding intent to harvest on all property harvested by him;

(e)     utilizing any price list that has not been substantiated by the Maine Forest Service and containing a disclosure of the variation that may occur by the buyer's evaluation as to quality and value;

(f)     entering into and conducting timber harvesting under any agreement with any owner of property in Maine unless it specifically requires payments for harvested wood sold to be made directly to the landowner by the mill or the purchaser of the harvested wood;

(g)     engaging in any timber transportation services with any wood harvester without a written contract spelling out the terms and assuring that the wood delivered under said contract is done so in the name of the harvester and the landowner;

(h)     renting any wood harvesting equipment to others without a written contract specifically spelling out the terms of the rental of equipment and operator without regard to any compensation based upon the wood harvested.

(4)     Judgment for plaintiffs against defendant Robert W. Tibbetts, Jr. for $18,000 civil penalty under the Uniform Trade Practices Act and $10,000 civil penalty under the Maine Forester Licensing Law.

(5)     Judgment for plaintiffs against defendant Robert W. Tibbetts, Sr. for $4,000 civil penalty under the Uniform Trade Practices Act and $2,000 as civil penalty under the Maine Weights and Measures Law.

(6)     Judgment for plaintiffs against defendant Darrell L. Tibbetts in the amount of $14,000 as civil penalty under the Uniform Trade Practices Act and $3,000 as civil penalty under the Maine Weights and Measures Law.

(7)     Judgment for plaintiffs against defendant Robert W. Tibbetts, Jr. and Darrell L. Tibbetts, joint and severally, in the amount of $4,223.98 as restitution on behalf of Steven Grenier.

(8)     Judgment for plaintiffs against defendant Darrell L. Tibbetts in the amount of $300 as restitution on behalf of Thomas Cremona.

(9)     Plaintiffs shall recover prejudgment interest on orders of restitutions at the rate of 4.28% commencing with the date of filing of motion for relief, December 10, 2004, and post-judgment interest at the rate of 10.36%.

(10)    In accordance with the provisions of 14 M.R.S.A. § 522(1)(A), the plaintiffs are allowed their costs, reasonable attorneys fees and reasonable expert witness fees to be determined upon filing appropriate affidavits with the court with proper notice to the defendants.

(11)    All injunctive provisions of the consent decree and order of November 26, 2001 remain in full force and effect.

The clerk may incorporate this order in the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated:  JANUARY 2, 2007

Donald H. Marden
Justice, Superior Court

Date Filed ___3/2/00___ ___Kennebec___ Docket No. ___CV00-43___
County

Action ___Unfair Trade Practice___

|  | | |
|---|---|---|
| Robert W Spear State of Me.,Dept. of Agriculture | VS. | Robert W Tibbetts, Jr.  Pro Se Darryl L Tibbetts Robert W Tibbetts, Sr. |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Lucinda E. White, AAG 6 State House Station Augusta, Maine 043330 — Linda Conti, AAG (Co-Counsel) | — Robert Tibbetts Jr. 72 East Dixfield Jay Maine 04289 — Henry W. Griffen, Esq. (Darryl Tibbetts) 37 Part St.,Suite 204 (5/15/00) Lewiston, Maine 04240 — Ronald J. Cullenberg, Esq. (Robert Tibbet 120 Broadway Sr.) PO Box 70 Farmington, Maine 04938-0070 |

| Date of Entry | |
|---|---|
| 3/2/00 | Complaint, filed. s/White, AAG Case file notice mailed to Atty. |
| 3/27/00 | Original Summons with return service made upon Robert W. Tibbetts, Sr. on 3/7/00 Cover letter indicates that an agreed to a two week extension to answer filed. s/White, AAG |
| 3/30/00 | Acceptance of service filed. s/White, AAG |
| 4/11/00 | Defendant's Answer, filed. s/Leary, Esq. (4/10/00) |
| 4/20/00 | Original summons with return service on Darryl L. Tibbetts on 3/29/00, filed. s/White, AAG |
| 5/15/00 | Defendants Answer to Complaint, filed. s/Griffen, Esq. |
| 5/17/00 | SCHEDULING ORDER, Marden, J. "Scheduling Order, filed. Discovery deadline is January 17, 2001." Copies mailed to attys. of record |
| 8/16/00 | Notification of Discovery Service, filed. s/Leary, Esq. Defendant's Request for Production of Documents Propounded upon Plaintiff served on Lucinda White, AAG on 8/11/00. Defendant's Interrogatories Propounded to Plantiff served on Lucinda White, AAG on 8/11/00. |
| 8/17/00 | Notice of Discovery Service, filed. s/White, AAG Plaintiffs' Designation of Harold Price as Expert Witness; Plaintiffs' Designation of William Ostrofsky as an Expert Witness; Plaintiffs' Designation of Dennis Brennan as an Expert Witness served on Justin Leary, Esq. and Henry Griffen, Esq. on 8/8/00. |
|  | Notice of Discovery Service, filed. s/White, AAG Notice of Deposition of Robert Tibbetts, Jr.; Notice of Deposition of Robert Tibbetts, Sr. and Notice of Deposition of Darryl Tibbetts served on Justin Leary, Esq. and Henry Griffin, Esq. on 8/16/00 |
| 9/11/00 | Notification of Discovery Service, filed. s/White, AAG Plaintiffs' Designation of Harold Prince as an Expert Witness;Plaintiffs' Designation of William D. Ostrofsky as an Expert Witness and Plaintiffs' Designation of Dennis Brennan as an Expert Witness served on Justin W. Lear |

| Date of Entry | Docket No. ___CV00-43___ <br> State of Maine & Robert Spear v. Robert Tibbetts, Jr., et al |
|---|---|
| 7/10/01 | Plaintiffs' Motion in Limine, filed. s/White, AAG <br> Plaintiffs' Memorandum in Support of Motion in Limine, filed. s/White, AA <br> Appendix to Memorandum in Support of Plaintiffs' Motion in Limine, filed. s/White, AAG <br> Proposed Order, filed. |
| 7/18/01 | Notification of Discovery Papers, filed. s/Leary, Esq. <br> Defendant's Response to Plaintiff's Stipulation served on Lucinda, AAG on 7/17/01 |
| 7/23/01 | Plaintffs' Exhibits #1-#38, #39-42,#50,#51-60, filed. s/White, AAG (bound volumes) |
| 8/1/01 | Defendants' Response to State's Motion in Limine, filed. s/Griffin, Esq. |
| 10/18/01 | Plaintiffs' Amended Witness List and Exhibit List, filed. s/L.White, AAG |
| 10/22/01 | Defendant's Revised Response to Plantiff's Proposed Stipulations, filed. s/J. Leary, Esq. and H. Griffin, Esq. |
| 10/24/01 | Letter from Attorney Leary joining in request that a hearing be set before trial on the motion in limine, filed. |
| 11/5/01 | ORDER ON MOTION IN LIMINE, Marden, J. (dated 11/2/01) <br> ORDERED: Defendant will provide such a document to plaintiff within five business days or experts will not be allowed to testify. Plaintiffs may depose experts so designated without further motion. Plaintiff's motion in limine is GRANTED.to extend covered in this order. <br> Copies mailed to attys. of record |
| ------- | Plaintiff's Amended Exhibit List, filed.s/White, AAG |
| 11/9/01 | Notification of Discovery Service, filed. s/Leary, Esq. <br> Defendants' Designation of Dave Warren as a Expert Witness served on Lucinda White, Esq. on 11/8/01. |
| 11/19/01 | Notification of Discovery Service, filed. s/White, AAG <br> Plaintiffs' Notice of Deposition of David Warren served on Justin W. Leary, Esq. and Henry W. Griffin, Esq. on 11/14/01. |
| -------- | Original Deposition of Jessica Tibbetts, Darryl L. Tibbetts, Robert W. Tibbetts, Jr., & Robert W. Tibbetts, Sr., filed. s/White, AAG |
| 11/21/01 | Case Settled. |
| 11/26/01 | CONSENT DECREE AND ORDER, Marden, J. <br> Copies mailed to Attys. and in hand to Atty. White <br> Notice of removal of depositions mailed to attys. |
| 3/26/02 | State picked up depositions. |
| 4/22/02 | Timber Sales Agreement, filed. s/Ronald Caouette |
| 12/10/04 | Motion for Relief Under Consent Decree and Order with Incorporated Memorandum of Law, filed. s/White, AAG <br> Request for Hearing, filed. s/White, AAG <br> Proposed Order, filed. |
| 12/22/04 | Motion for Extension of Time to File Response to State's Motion for Violation of Consent Order and Civil Peanalties, filed. s/Cullenberg, Esq. <br> Proposed Order on Defendant's A)Motion to Amend to State's Motion for Violatioon of Consent Order and Civil Penalties B)Motion to Dismiss Party from the Motion, filed. <br> Request for Hearing on Motion, filed. s/Cullenberg, Esq. |

| Date of Entry | Docket No. _____CV00-43_____ State of Maine & Robert Spear v.Robert Tibbetts, Jr., et al |
|---|---|
| ------- | #15-Spreadsheet-stumpage report is admitted w/o objection,#23-Flyer is marked, #21-Memo by John Leavitt is admitted w/o objection,#2A-document is admitted over objection,#32-Print outs-summary listing is marked, #19-flyer is admitted w/o objection,#20-Timber harvest contract is admitted over objection Trial recesses to resume at 12:30 p.m. on 5/26/05 |
| | Trial resumes at 12:30 p.m. on 5/26/05 with the Hon. Justice Donald Marden presiding. Phil Galucki, CR Plaintiff calls Donald Mixer and Paul Larrabee as witnesses. Plaintiff's exhibits #33-Original contract w/Mixer is admitted w/o objecti #41-document is marked, #26-business card of Mr. Wakefield is admitted w/o objection,#25- information sheet in Tax law is admitted w/o objection, #42-Pieces of spruce trees is not admitted,#24-photos are admitted w/o objection,#39-Certification of public record is admitted w/o objection, #38- Code of ethics is admitted over objection,#40-Stumpage price report, Trial recesses to resume on 5/27/05 |
| | Trial resumes on 5/27/05 with the Hon. Justice Donald Marden, presiding. Phil Galucki, cr Plaintiff calls Harold Prince as a witness. Plaintiff's #22-Woodcutting flow chart by Harold Prince is admitted w/o objection,#35-copy of Wood-Measurement rules(regulations) is admitted w/o objection,#23-flyer found by Harold Prince is admitted w/o objection, #36 a,b,c-certified copy of wood measurement rules copy of rule making-amendment is admitted w/o objec Plaintiff rests. |
| | Defendant calls Vivian Burhoe, Raymond Cook, Glen Rowe, Darrell Tibbetts and Paul Reed as witnesses. Defendant's exhibits (3/9/05) #1Darrell-contract signed by Kenneth Coleman is admitted w/o objection, #1Robert,Sr.-map of area being timbered is admitted w/o objection, (5/26/05) #2-check from Robert, Jr. received by Mr.Mixer is admitted w/o objection, #3-check from Robert Jr., received by Mr. Mixer is admitted w/o objection,#2Darrell- chart of stumpage prices is admitted w/o objection, #4Darrell-Maine inspection notice is marked, defer ruling,#1Darrell-conversion table cord/weightfor various Maine Commercial Tree, #6-copy of contract with steve Grenier is marked,#4-map withdrawn. |
| | Trial recesses to resume tentative date is June 23, 2005 |
| 6/23/05 | Motion for Relief Under Consent Decree continues with the Hon. Donald Mard presiding. Phil Galucki, CR. Lucinda White, AAG for the State of Maine, Robert Tibbetts, Jr., Pro Se, Henry Griffen, Esq. for Darrell Tibbetts and Ronald Cullenberg, Esq. for Robert Tibbetts, Sr. Defendant Darrell Tibbetts calls Jessica Tibbetts as a witness. Defendant Darrell Tibbetts rests. Defendant Robert Tibbetts is called as a witness. Defendant Tibbetts, Sr. rests. Pro Se Defendant, Robert Tibbetts, Jr. testifies on his behalf. Defendant, Robert Tibbetts, Jr. rests. Defendant 2A-Robert Tibbetts, Sr. exhibit-Photo of Horses is admitted without objection. Defendant 3A-Robert Tibbetts, Sr.- copy of insurance policy is admitted without objection. Defendant Robert Tibbetts, Jr. #1-letter from Roland Vachon is marked. |
| | Parties to submit final argumments within 20 days. Defendant's have 20 days after receiving state's memorandum and 5 days for rebuttal |

STATE OF MAINE DEPARTMENT OF AGRICULTURE - PLAINTIFF

Attorney for: STATE OF MAINE DEPARTMENT OF AGRICULTURE
LUCINDA E WHITE  - RETAINED 03/02/2000
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


ROBERT SPEAR  - PLAINTIFF


vs
ROBERT TIBBETTS JR - DEFENDANT
72 EAST DIXFIELD,
JAY ME 04239
DARRYL TIBBETS  - DEFENDANT
,
Attorney for: DARRYL TIBBETS
HENRY GRIFFIN  - RETAINED
LAW OFFICE OF HENRY W GRIFFIN
37 PARK ST  SUITE 204
LEWISTON ME 04240


ROBERT TIBBETTS SR - DEFENDANT
,
Attorney for: ROBERT TIBBETTS SR
RONALD CULLENBERG  - RETAINED
CULLENBERG LAW OFFICES
120 BROADWAY
PO BOX 70
FARMINGTON ME 04938-0070

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2000-00043

**DOCKET RECORD**


Filing Document: COMPLAINT                    Minor Case Type: OTHER EQUITABLE RELIEF
Filing Date: 03/02/2000

## Docket Events:

04/10/2006 FILING DOCUMENT - COMPLAINT FILED ON 03/02/2000

          NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 03/02/2000

04/10/2006 Party(s):  STATE OF MAINE DEPARTMENT OF AGRICULTURE
          ATTORNEY - RETAINED ENTERED ON 03/02/2000
          Plaintiff's Attorney: LUCINDA E WHITE

04/10/2006 Party(s):  DARRYL TIBBETS
          ATTORNEY - RETAINED ENTERED ON 05/15/2000
          Defendant's Attorney: HENRY GRIFFIN

04/10/2006 Party(s):  ROBERT TIBBETTS SR
          ATTORNEY - RETAINED ENTERED ON 04/11/2000
          Defendant's Attorney: RONALD CULLENBERG

04/10/2006 Party(s):  ROBERT TIBBETTS SR
          RESPONSIVE PLEADING - RESPONSE FILED ON 04/10/2006
          Defendant's Attorney: RONALD CULLENBERG
          DEFENDANT ROBERT TIBBETTS SR'S. RESPONSE TO STATES PENALTY MEMORANDUM

STATE OF MAINE DEPARTMENT OF AGRICULTURE - PLAINTIFF

Attorney for: STATE OF MAINE DEPARTMENT OF AGRICULTURE
LUCINDA E WHITE  - RETAINED 03/02/2000
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


ROBERT SPEAR  - PLAINTIFF


vs
ROBERT TIBBETTS JR - DEFENDANT
72 EAST DIXFIELD,
JAY ME 04239
DARRYL TIBBETS  - DEFENDANT
,
Attorney for: DARRYL TIBBETS
HENRY GRIFFIN  - RETAINED
LAW OFFICE OF HENRY W GRIFFIN
37 PARK ST  SUITE 204
LEWISTON ME 04240


ROBERT TIBBETTS SR - DEFENDANT
,
Attorney for: ROBERT TIBBETTS SR
RONALD CULLENBERG  - RETAINED
CULLENBERG LAW OFFICES
120 BROADWAY
PO BOX 70
FARMINGTON ME 04938-0070

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2000-00043

**DOCKET RECORD**


Filing Document: COMPLAINT                Minor Case Type: OTHER EQUITABLE RELIEF
Filing Date: 03/02/2000

# Docket Events:

04/10/2006 FILING DOCUMENT - COMPLAINT FILED ON 03/02/2000

          NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 03/02/2000

04/10/2006 Party(s):  STATE OF MAINE DEPARTMENT OF AGRICULTURE
          ATTORNEY - RETAINED ENTERED ON 03/02/2000
          Plaintiff's Attorney: LUCINDA E WHITE

04/10/2006 Party(s):  DARRYL TIBBETS
          ATTORNEY - RETAINED ENTERED ON 05/15/2000
          Defendant's Attorney: HENRY GRIFFIN

04/10/2006 Party(s):  ROBERT TIBBETTS SR
          ATTORNEY - RETAINED ENTERED ON 04/11/2000
          Defendant's Attorney: RONALD CULLENBERG

04/10/2006 Party(s):  ROBERT TIBBETTS SR
          RESPONSIVE PLEADING - RESPONSE FILED ON 04/10/2006
          Defendant's Attorney: RONALD CULLENBERG
          DEFENDANT ROBERT TIBBETTS SR'S. RESPONSE TO STATES PENALTY MEMORANDUM